**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05-41108-399 |
| | ) | |
| FALCON PRODUCTS, INC., a | ) | JOINTLY ADMINISTERED UNDER |
| Delaware Corporation, et al., | ) | CHAPTER 11 |
| | ) | |
| Debtors | ) | |
| | ) | |
| | ) | **CONSOLIDATED RESPONSE TO** |
| | ) | **OBJECTIONS TO APPLICATION** |
| | ) | **OF THE OFFICIAL COMMITTEE** |
| | ) | **OF UNSECURED CREDITORS TO** |
| | ) | **EMPLOY MORGAN KEEGAN &** |
| | ) | **COMPANY, INC. AS** |
| | ) | **INVESTMENT BANKER** |

The Official Committee of Unsecured Creditors ("Committee") for its response to the objections filed by (i) the Debtors, (ii) OCM Principal Opportunities Fund II, L.P. and Whippoorwill Associates, Inc. ("Oaktree"), and (iii) DDJ Capital Management, LLC ("DDJ") to the Committee's Application to employ Morgan Keegan & Company, Inc. as investment banker, states:

**INTRODUCTION**

1.      The Committee has applied to this Court to retain an investment banker for the minimal initial retainer of $100,000 to assist the Committee in ensuring that the joint activities of the Debtors, Oaktree, and DDJ to sell the assets of the Debtors to Oaktree represents the best and highest offer for the Debtors' assets.  The Committee has not filed a motion to sell the assets of the Debtors.

181774.1

- 1 -

2.      Very early in these cases, the Debtors touted Oaktree's acquisition of the Debtors, which would provide payment in full to the "trade creditors" and offers of stock to other unsecured creditors.  Creditors were led to believe that a plan to implement this transaction was forthcoming and that there would be little to no deviation of from the non-binding "agreement in principal" between the Debtors and Oaktree.

3.      The Committee has spent the last six months attempting to obtain evidence of a solid commitment on the part of Oaktree and the Debtors to file a plan that incorporated the terms of the "agreement in principal."  No such commitment has been given.  Instead, as the Committee patiently waited, the Debtors have sustained significant operating losses, losing substantial value for the estates' creditors.

4.      Debtors doubtlessly will cobble together a hurried plan prior to the hearing on the Morgan Keegan application, so the Committee will not respond to the parts of the objections challenging the timing of the application being filed during the Debtors' exclusivity periods.

5.      The Committee has filed a motion to terminate exclusivity.  The arguments made in the motion to terminate exclusivity are incorporated herein.

6.      The Committee believes that the employment of an investment banker is appropriate at this time in the case to help the Committee to test the market to determine if there is a strategic buyer that would be willing to offer more consideration than Oaktree for the Debtors' assets, and to assist the Committee in an auction process, should a higher bidder be identified.

## SALE OF THE DEBTORS' ASSETS

7.      The Debtors have an "agreement in principle" to sell their assets.  However, nothing shows that the companies were adequately marketed prior to entering in to the agreement with

181774.1

- 2 -

Oaktree, which would entrench longtime management.  Instead it appears that the insiders are excluding all potential acquirers except Oaktree, because that deal benefits existing management.

8.     The Committee has selected Morgan Keegan to investigate the going concern value and the market for Debtors' sale.  If a higher and better offer is identified by Morgan Keegan, then it would be the Debtors' fiduciary duty to determine what offer provided the best and highest value for the benefit of all the Debtors' creditors, not just for Oaktree or insiders.  It would be expected that the Debtors would implement an auction process to ensure that the best and highest offer could be found.

9.     Instead, the Debtors, Oaktree, and DDJ all seem to profess that the Debtors do not have this fiduciary duty, and do not have to test the market to ensure that the Oaktree offer is the best one.  Debtors and DDJ are singleminded in their efforts to transfer Debtors' businesses to Oaktree at any price.

10.     In the event the Debtors do not exercise their fiduciary duty in the face of a higher and better offer, the Committee has the recourse of moving for the appointment of a trustee or examiner, who could conduct a sale of the Debtors' businesses under 11 U.S.C. § 363.

**OTHER DUTIES TO BE PERFORMED BY MORGAN KEEGAN**

11.     Investment bankers are often required by Committees when the debtor is a public company of sufficient size and nature to be of interest to the investment community.  *Collier Handbook for Creditors' Committees* ¶ 8.10[1] (2004).  Duties of such an investment banker may include the valuation of the existing business, value of the reorganized business, and valuation of the reorganization securities.  *Id.* at ¶ 8.10[2].

12.     Pursuant to its "agreement in principal," the plan to be proposed by the Debtors and Oaktree will involve the issuance of reorganization securities that will be the only recovery for the

181774.1

- 3 -

non-trade unsecured creditors.  The Committee certainly has the ability and right to employ Morgan Keegan to assist in the valuation of such securities.

13.     The Committee may also investigate the "acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtors' business and the desirability of the continuance of such business, and any other matter relevant to the case or the formulation of the plan" under 11 U.S.C. § 1103(C)(2).  Morgan Keegan's involvement is essential to the Committee being able to conduct this type of investigation, by testing the market regarding the Debtors' going concern value and reviewing the value of any reorganization securities to be issued under a plan.

14.     Morgan Keegan's compensation for initial work in marketing the businesses and to assist the Committee in other valuation duties is a minimal amount of $100,000.  This is a reasonable fee for the type of services to be provided.  Only in the event that Morgan Keegan is able to bring an additional value to the estates will it be entitled to any additional fees. Additionally, all fees to be paid to Morgan Keegan will be subject to a reasonableness review under 11 U.S.C. § 330.

### THERE IS NO EQUITABLE BAR TO THE APPOINTMENT OF MORGAN KEEGAN

15.     The Committee's application to retain Morgan Keegan has the sole purpose of ensuring that the assets of the Debtors are sold for the highest and best bid.

16.     In connection with maximizing the value of the estate for the unsecured creditors, the Committee has also challenged the secured position of certain of the creditors, under 11 U.S.C. § 506, arguing there are insufficient collateral asset values to secure the claims.  The sale of the Debtors' businesses will be determined on what a potential purchaser will be willing to pay for the Debtors' businesses as going concerns.  The two valuations are distinguishable.

181774.1

- 4 -

17.     The arguments of the Debtors, Oaktree, and DDJ that the Committee is somehow acting inequitably in bringing both a Section 506 complaint and the application to retain Morgan Keegan ignore fundamental valuation differences, and should be disregarded by the Court.

WHEREFORE, the Official Committee of Unsecured Creditors requests the entry of an order of this Court employing Morgan Keegan in this case, and providing such other relief as is just and proper.

DATED:  June 21, 2005

SPENCER FANE BRITT & BROWNE

  /s/  Daniel D. Doyle
Daniel D. Doyle (MO 36724; EDMO 3011)
ddoyle@spencerfane.com
Nicholas Franke (MO 37402; EDMO 117136)
nfranke@spencerfane.com
Jennifer A. Merlo (MO 51455; EDMO 109053
jmerlo@spencerfane.com
1 North Brentwood Boulevard, Tenth Floor
St. Louis, MO 63105
Telephone: (314) 863-7733
Fax: (314) 862-4656

ATTORNEYS FOR OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

181774.1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of June, 2005, I sent by first class mail, postage prepaid, a copy of the above unless electronically served to the Master Service Notice No. 3 dated May 18, 2005 and Master Notice List No. 4 dated May 18, 2005.


 /s/ Kimberly Collier

181774.1