## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-41108-399 |
| | ) |
| FALCON PRODUCTS, INC., a | ) JOINTLY ADMINISTERED UNDER |
| Delaware corporation, et al., | ) CHAPTER 11 |
| | ) |
| | ) **PLAN CONFIRMATION HEARING:** |
| Debtors. | ) |
| | ) Response Due: September 26, 2005 |
| | ) Hearing Date: October 6, 2005 |
| | ) Hearing Time: 10:00 a.m. |
| | ) Location: Thomas F. Eagleton |
| | ) U.S. Courthouse |
| | ) 111 South Tenth Street |
| | ) Fifth Floor North |
| | ) St. Louis, MO 63102 |
| | ) |
| | ) **DISCLOSURE STATEMENT TO** |
| | ) **ACCOMPANY DEBTORS' SECOND** |
| | ) **AMENDED JOINT CHAPTER 11 PLAN OF** |
| | ) **REORGANIZATION** |
| | **(August 29, 2005)** |

380090v2

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................. 2

    A.    The Purpose Of This Disclosure Statement. ............................................. 3

    B.    Summary Of Entities Entitled To Vote On The Plan And Of
        Certain Requirements Necessary For Confirmation Of The Plan. ..................... 4

    C.    Confirmation Hearing, Voting Procedures, Voting Deadline, And
        Other Important Dates, Deadlines, And Procedures. ............................... 5

        1.    Voting Procedures And Deadlines. ........................................... 5

        2.    Date Of The Confirmation Hearing And Deadlines For
            Objections To Confirmation Of The Plan. ................................. 6

    D.    Important Notices And Cautionary Statements. ...................................... 7

    E.    Additional Information. ................................................................... 10

II. BACKGROUND Of the debtors ......................................................................... 12

    A.    Prepetition Background. ................................................................ 12

        1.    Corporate Structure. ........................................................... 12

        2.    Furniture Manufacturing Operations. ...................................... 13

        3.    Intellectual Property. .......................................................... 15

        4.    Equity Ownership. ............................................................. 15

        5.    Management Of The Debtors ................................................. 15

        6.    Events Leading To The Chapter 11 Filings. ............................... 16

        7.    The Debtors' Prepetition Secured Debt And Unsecured
            Public Debt. ..................................................................... 17

        8.    Summary of Selected Historical Consolidated Financial
            Data. .............................................................................. 20

III. The Chapter 11 cases ....................................................................................... 21

    A.    Debtor in Possession Status. .......................................................... 21

**B.**   Entry Of The Debtors' Emergency First-Day Orders And Other
Relief Granted Early In The Cases. ...................................................................... 21

   **1.**   Orders Authorizing The Use Of Cash Collateral Order And
Approving Debtor In Possession Financing; DIP Funds
Used To Pay Fleet And The Term Component Lenders........................... 22

   **2.**   Purchase Of The Original Term B Lenders' Claims By
OCM POF II, Whippoorwill, and Certain Funds And
Accounts Managed By Dalton Investments, LLC. ................................... 24

   **3.**   Retention Of Professionals, A Claims, Noticing And
Balloting Agent, And Appointment Of The Committee........................... 24

   **4.**   Order Relating To The Debtors' Workers' Compensation
Claims. ..................................................................................................... 26

      **a.**   ACE Assumption Motion: ............................................................ 26

      **b.**   Workers' Compensation Motion. .................................................. 27

**C.**   Consolidation Of The Debtors' Businesses And The Post-
Confirmation Business Plan.................................................................................. 27

   **1.**   Overview Of Consolidation Plan. ............................................................ 27

   **2.**   Consolidation Of Product Lines............................................................... 29

   **3.**   Consolidation Of Facilities. ..................................................................... 29

   **4.**   Outsourcing Product And Reducing Material Costs................................. 29

   **5.**   Process Improvement In Plants and Improvement In
Support Functions. ................................................................................... 30

   **6.**   Pricing Changes. ...................................................................................... 31

   **7.**   Quality Improvements. ............................................................................ 31

   **8.**   Consolidation Of Offices And Disposition Of Subsidiaries
And Other Assets. .................................................................................... 32

      **a.**   Transition Of Employees To The Morristown
Facility. ....................................................................................... 32

      **b.**   Downsizing The St. Louis Headquarters. ..................................... 33

      **c.**   Sale Of The Phillocraft Product Line............................................ 33

          **d.**      Epic Offices Closure. ................................................................. 34

          **e.**      Disposition of S&J. ................................................................ 34

          **f.**      Disposition Of The Mimon Facility in the Czech Republic. ............................................................................. 35

          **g.**      Excess Inventory. ............................................................... 36

     **9.**      The Debtors' Leased And Owned Properties. ........................................... 36

  **D.**      Other Material Relief Sought And/Or Obtained In The Chapter 11 Cases. ................................................................................. 38

     **1.**      Extension of Exclusivity. ........................................................... 38

     **2.**      Postpetition Litigation Between The Committee And The Secured Lenders. ................................................................. 38

  **E.**      The SEC Investigation, The Audit Committee Report, Related Inventory Write-Offs, And Other Adjustments. ..................................... 39

  **F.**      The Debtors' Post-Petition Operating Results And the Resulting Changes To The Non-Binding Restructuring Term Sheet. ................................... 42

     **1.**      The Non-Binding Restructuring Term Sheet. ........................................... 42

     **2.**      The Debtors' Post-Petition Operating Results And Changes To The Non-Binding Restructuring Term Sheet. ..................................... 44

     **3.**      The Debtors' Need To Emerge From Chapter 11 By The End Of October 2005. .............................................................. 47

  **G.**      Bar Date For Prepetition Claims. ........................................................ 47

     **1.**      Estimated Amounts Of Claims. ....................................................... 48

          **a.**      Contingent PBGC Claims. ........................................................ 48

  **H.**      Actual and Projected Recovery of Preferential or Fraudulent Transfers. ................................................................................ 50

**IV.** FINANCIAL PROJECTIONS AND VALUATIONS. ............................................. 51

  **A.**      Financial Projections. ................................................................ 51

     **1.**      Overview. ......................................................................... 51

  **B.**      Valuations Of The Reorganized Debtors. ............................................... 53

**V.** ADDITIONAL CONSIDERATIONS REGARDING RISK ................................................. 58

    **A.**    Risks Relating To The Bankruptcy. ........................................................ 58

    **B.**    Risk Factors Relating To The Business. ................................................. 59

    **C.**    Risks Relating To The Rights Offering And The New Common
           Stock. ............................................................................................... 65

**VI.** SUMMARY OF THE PLAN ............................................................................... 70

    **A.**    Overview Of Major Provisions Of The Plan. ......................................... 70

          **1.**    General Structure Of The Plan. ................................................. 70

          **2.**    Substantive Consolidation/Joint Claims Against Multiple
              Debtors (Including Guarantee Claims). ........................................ 73

    **B.**    Classification And Treatment Of Claims And Interest. ............................ 74

          **1.**    Unclassified Claims. ............................................................... 75

              **a.**    Administrative Claims And Administrative Tax
                    Claims. ......................................................................... 75

              **b.**    Priority Tax Claims. ....................................................... 77

          **2.**    DIP Facility Claims. ................................................................ 78

          **3.**    Classified Claims And Interests. ................................................ 79

              **a.**    Class 1A (Fleet Revolver Claims). .................................. 79

              **b.**    Class 1B (Term Component Loan Lender Claims). ..................... 79

              **c.**    Class 2 (Term A Secured Lenders' Claims). ................................ 79

              **d.**    Class 3 (Term B Secured Lenders' Claims). ................................ 80

              **e.**    Class 4 (Other Secured Claims). .................................... 81

              **f.**    Class 5 (Other Priority Claims). .................................... 82

              **g.**    Class 6A (General Unsecured Claims, Including
                    The Noteholders' Claims). ............................................... 83

              **h.**    Class 6B (Insurance-Covered Claims). .......................................... 87

              **i.**    Class 6C (Junior Convertible Debenture Holders). ..................... 88

|   |   | j. | Class 7A (Falcon Interest Holders). | 88 |
|   |   | k. | Class 7B (Epic Interest Holders). | 89 |
| C. |   |   | Treatment Of Executory Contracts And Unexpired Leases. | 89 |
|   | 1. |   | Generally. | 89 |
|   | 2. |   | Assumed And Assigned Executory Contracts And Leases. | 90 |
|   |   | a. | Objecting to Assumption or Assumption and Assignment And To Cure Amounts. | 91 |
|   | 3. |   | Rejected Executory Contracts And Leases. | 93 |
| D. |   |   | Creation Of The Creditor Trust. | 94 |
|   | 1. |   | The Trustee of the Creditor Trust. | 94 |
|   | 2. |   | The Creditor Trust. | 95 |
| E. |   |   | Funding Of The Plan. | 97 |
|   | 1. |   | Exit Facility. | 97 |
|   | 2. |   | Amended Term A Secured Loan. | 98 |
|   | 3. |   | Post-Confirmation Term B Secured Loan. | 98 |
|   | 4. |   | The Rights Offering. | 99 |
|   |   | a. | Only Electing Holders Are Eligible To Participate. | 100 |
|   |   | b. | Participation In The Rights Offering And The Mechanics Of The Rights Offering. | 100 |
|   |   | c. | Rights Offering Shares -- Rights Offering Equity Value. | 103 |
|   |   | d. | Backstop Agreement. | 105 |
|   |   | e. | Agreed Class 6A Claim. | 105 |
|   |   | f. | Electing Holders. | 105 |
|   |   | g. | Transfer Restriction; Revocation. | 106 |
|   |   | h. | Rights Offering Funding Date And Proceeds Distribution. | 106 |

F.  Confirmation And The Effective Date.................................................................. 108

　　1.  Confirmation. ......................................................................................... 108

　　2.  Effective Date. ....................................................................................... 109

G.  Non-Occurrence Of Effective Date. ................................................................. 110

H.  Effects Of Confirmation. ................................................................................. 110

I.  The Reorganized Debtors. ................................................................................ 110

　　1.  The Management Incentive Plan. ........................................................... 112

　　2.  Post-Confirmation Management. ............................................................ 113

　　3.  Objections To Claims. ............................................................................ 114

J.  Disputed Claims.............................................................................................. 114

K.  Reserves. ........................................................................................................ 114

　　1.  Administrative Claims And Administrative Tax Claims........................ 114

　　2.  Other Priority Claims. ............................................................................ 114

　　3.  Priority Tax Claims................................................................................. 115

　　4.  Class 6A Claims...................................................................................... 115

L.  Estimation Of Class 5, 6A, and 6B Claims....................................................... 115

　　1.  De Minimis Distributions And Fractional Shares.................................... 116

　　　　a.  Cash Distributions....................................................................... 116

　　　　b.  New Common Stock Distributions. ............................................. 117

M.  Delivery Of Distributions. ............................................................................... 117

N.  Record Date. ................................................................................................... 118

O.  Unclaimed Property. ........................................................................................ 118

P.  Withholding Of Taxes...................................................................................... 118

Q.  Professional Fees And Expenses. ..................................................................... 118

R.  Vesting Of Property. ........................................................................................ 119

S.    Cancellation of Old Instruments And Securities. ............................... 119

    1.    Surrender and Cancellation of Instruments and Securities. ................... 119

    2.    Rights of Persons Holding Old Instruments and Securities.................... 119

T.    Cancellation of Liens. ........................................................................ 120

U.    Interest............................................................................................... 120

V.    Release of Liability of Estate Agents, Lenders, And the Backstop
    Parties.................................................................................................. 121

W.    Retention Of Jurisdiction. .................................................................. 122

X.    Debtors' Preservation of Rights of Action and Defenses.................... 125

Y.    Discharge And Injunction. .................................................................. 126

    1.    Discharge. .................................................................................. 126

    2.    Injunction. .................................................................................. 127

    3.    Modification And Withdrawal Of The Plan. ............................. 128

    4.    1146(c) Exemption...................................................................... 128

    5.    U.S. Trustee Fees. ...................................................................... 129

    6.    Restructuring Expenses............................................................... 129

    7.    General Authority. ...................................................................... 130

    8.    Dissolution Of Committee. ......................................................... 130

    9.    No Admission. ............................................................................ 130

    10.    Exemption from Securities Laws............................................... 130

    11.    Final Decree. ............................................................................ 131

VII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES............................................. 131

A.    Introduction........................................................................................ 131

B.    Federal Income Tax Consequences to The Debtors. .......................... 132

    1.    Tax Reorganizations. ................................................................. 132

|  |  | 2. | Carryover And Availability Of The Debtor Consolidated Group's Net Operating Losses. | 133 |
|  |  |  | a. | General. | 133 |
|  |  |  | b. | Section 382. | 133 |
|  |  | 3. | Reduction Of The Debtors' Indebtedness. | 135 |
| C. |  | Tax Consequences To Creditors. | | | 136 |
|  |  | 1. | Claims Constituting Tax Securities. | | 137 |
|  |  |  | a. | Definition Of "Security" For Tax Purposes. | 137 |
|  |  |  | b. | Receipt Of Tax Securities. | 137 |
|  |  |  | c. | Receipt Of Cash Or Debt Not Constituting Tax Securities For Tax Securities. | 138 |
|  |  |  | d. | Determination Of Character Of Gain. | 138 |
|  |  |  | e. | Tax Basis And Holding Period Of Items Received. | 139 |
|  |  |  | f. | Receipt Solely Of Boot. | 139 |
|  |  | 2. | Claims Not Constituting Tax Securities. | | 140 |
|  |  |  | a. | Gain/Loss On Exchange. | 140 |
|  |  |  | b. | Tax Basis And Holding Period Of Items Received. | 140 |
|  |  |  | c. | Bad Debt Deduction on Discharge of Claim. | 140 |
|  |  | 3. | Receipt Of Interest. | | 141 |
|  |  | 4. | Other Tax Considerations. | | 141 |
|  |  |  | a. | Market Discount. | 141 |
|  |  |  | b. | Original Issue Discount. | 142 |
|  |  |  | c. | Withholding. | 142 |
|  |  |  | d. | Taxation Of Certain Reserves. | 142 |
| D. |  | Tax Consequences To Holder Of Old Falcon Common Stock. | | | 143 |
| E. |  | Tax Consequences of Rights Offering. | | | 143 |

**VIII.** CONFIRMATION PROCEDURES ................................................................ 144

    **A.**     General Requirements For Plan Confirmation. ................................... 144

    **B.**     Voting And Right To Be Heard At Confirmation. ............................. 146

        **1.**     Who May Vote To Accept Or Reject The Plan? ..................... 146

        **2.**     Who May Support Or Object To Confirmation Of The Plan?.............................................................................................. 146

        **3.**     What Is An Allowed Claim Or Interest For Voting Purposes? ............................................................................... 146

        **4.**     What Is An Impaired Claim? ................................................. 147

        **5.**     Who Is Not Entitled To Vote? ............................................... 147

        **6.**     Votes Necessary To Confirm The Plan. ................................. 148

        **7.**     Votes Necessary For A Class To Accept The Plan................................ 148

        **8.**     Treatment Of Nonaccepting Classes – "Cramdown"............................. 148

            **a.**     No Unfair Discrimination. .......................................... 149

            **b.**     Fair And Equitable Treatment. .................................... 149

        **9.**     Request For Confirmation Despite Nonacceptance By Impaired Classes. ................................................................. 150

    **C.**     Section 1129(b) – "Cramdown" – Analysis. ...................................... 150

    **D.**     "Best Interests Test"/Hypothetical Liquidation Analysis. .................... 151

        **1.**     Overview. .............................................................................. 151

        **2.**     The Hypothetical Liquidation Analysis. ................................. 153

            **a.**     Estimates Of Net Proceeds............................................ 155

            **b.**     Estimates Of Costs. ..................................................... 156

            **c.**     Distribution Of Net Proceeds....................................... 157

    **E.**     Plan Feasibility And Source Of Distributions. .................................. 159

**IX.** RECOMMENDATION AND CONCLUSION ................................................. 160

# I.

## INTRODUCTION

The following debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Code") on January 31, 2005 (the "Petition Date"), thereby commencing Case Numbers 05-41108-399, 05-41119-399, 05-41121-399, 05-41122-399, 05-41123-399, 05-41124-399, 05-41126-399, 05-41127-399, and 05-41128-399 (collectively, the "Cases"), currently pending before the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court"):

| | |
|---|---|
| Falcon Products, Inc., a Delaware corporation ("Falcon"); Case No. 05-41108-399 | Howe Furniture Corporation, a New York corporation ("Howe"); Case No. 05-41123-399 |
| Epic Furniture Group, Inc. a Delaware corporation ("Epic"); Case No. 05-41128-399 | Shelby Williams Industries, Inc., a Delaware corporation ("Shelby Williams"); Case No. 05-41126-399 |
| Sellers & Josephson, Inc., a New Jersey corporation ("S&J"); Case No. 05-41119-399 | Madison Furniture Industries, Inc., a Mississippi corporation ("Madison Furniture Industries"); Case No. 05-41127-399 |
| Falcon Holdings, Inc., a Missouri corporation ("Falcon Holdings"); Case No. 05-41124-399 | Johnson Industries, Inc., an Illinois corporation ("Johnson Industries"); Case No. 05-41121-399 |
| The Falcon Companies International, Inc., a Missouri corporation ("Falcon Companies International"); Case No. 05-41122-399 | |

Since the Petition Date, the Debtors have continued to operate their business and to manage their affairs as Debtors and Debtors in Possession pursuant to sections 1107 and 1108 of the Code. On February 3, 2005, the Bankruptcy Court entered an order authorizing the joint administration of the Debtors' Cases.

The Debtors, along with OCM Principal Opportunities Fund II, L.P. ("OCM POF II"), and Whippoorwill Associates, Inc., as agent for its various discretionary funds and accounts ("Whippoorwill"), are the proponents (the "Co-Proponents") of the "Debtors' Second

Amended Joint Chapter 11 Plan Of Reorganization (August 29, 2005)" (the "Plan"),[1] which is attached hereto as Exhibit "1". The Bankruptcy Court has determined that this Disclosure Statement contains "adequate information" within the meaning of Code section 1125, and has authorized the Debtors to transmit it to Holders of impaired Claims and impaired Interests in connection with the solicitation of votes with respect to the Plan.

The Co-Proponents believe that, under the circumstances of the Cases, the Plan provides the best possible recoveries to Holders of Claims, that acceptance of the Plan is in the best interests of all parties, and that any alternative would result in further delay, uncertainty, and expense.

In addition, the Plan reflects the results of a settlement reached by the Debtors, the Co-Proponents, and the Committee. As a result, the Committee supports the Plan and also believes that acceptance of the Plan is in the best interests of all parties.

## A.    The Purpose Of This Disclosure Statement.

The Code generally requires that the proponent of a plan of reorganization prepare and file with the Bankruptcy Court a "disclosure statement" that provides information of a kind, and in sufficient detail, that would enable a typical holder of claims or interests in a class impaired under the plan and entitled to vote on the Plan to make an informed judgment about the plan. This Disclosure Statement provides such information regarding the Debtors, the Cases, and the Plan, as well as information regarding the deadlines for casting Ballots with respect to the Plan, the deadlines for submitting the Subscription Election Forms and Class 6B Election Forms, the deadlines for objecting to confirmation of the Plan, and the requirements that must be satisfied in order for the Bankruptcy Court to confirm the Plan. *Creditors and shareholders should read this Disclosure Statement, the Plan, and all of the accompanying exhibits in their entirety in order to ascertain:*

---

[1]    All capitalized terms that are not otherwise defined in this Disclosure Statement have the meaning ascribed to them in Article I of the Plan, and this Disclosure Statement should therefore be read in conjunction with the Plan.

1.      *How the Plan will affect their Claims against and Interests in the Debtors;*

2.      *Their rights with respect to voting for or against the Plan;*

3.      *Their rights with respect to objecting to Confirmation of the Plan;*

4.      *How and when to cast a Ballot and/or file objections with respect to the Plan; and*

5.      *Their eligibility to participate in the Rights Offering being conducted by the Debtors.*

This Disclosure Statement, however, cannot and does not provide Holders of Claims and Interests with legal or other advice, or inform such parties of all aspects of their rights. ***Creditors and shareholders of the Debtors are advised to consult with their lawyers and/or financial advisors to obtain more specific advice regarding how the Plan will affect them and regarding their best course of action with respect to the Plan.***

This Disclosure Statement has been prepared by the Debtors in good faith and in compliance with applicable provisions of the Code. Based upon information currently available, the Debtors believe that the information contained in this Disclosure Statement is correct, in all material respects, as of the date of its dissemination. ***With certain exceptions, this Disclosure Statement does not and will not reflect events that occur after August 24, 2005, and the Debtors assume no duty and presently do not intend to prepare or distribute any amendments or supplements to reflect such events.***

**B.      Summary Of Entities Entitled To Vote On The Plan And Of Certain Requirements Necessary For Confirmation Of The Plan.**

Only Holders of allowed Claims in Classes 2, 3, and 6A (collectively, the "Voting Classes"), are entitled to vote on the Plan because such Classes are the only Classes that are "impaired," within the meaning of section 1124 of the Code, and that will receive or retain property under the Plan. *See* Article VI.B of this Disclosure Statement for a description of the various Classes of Claims and Interests, and of the treatment of such Claims and Interests under

the Plan, and *see* Article VIII.B hereof for an explanation of impairment, and the entities that are entitled to vote on the Plan.

The Bankruptcy Court may confirm the Plan only if at least one Class of impaired Claims has voted to accept the Plan (without counting the votes of any insiders whose Claims are classified within that Class), and if certain statutory requirements are met as to both nonconsenting members within a consenting Class and as to dissenting Classes. A Class of Claims has accepted the Plan only when more than one-half in number and at least two-thirds in amount of the Allowed Claims actually voting in that Class vote in favor of the Plan. *See* Article VIII hereof for a description of various other requirements for acceptance and confirmation of the Plan.

**C.      Confirmation Hearing, Voting Procedures, Voting Deadline, And Other Important Dates, Deadlines, And Procedures.**

**1.      Voting Procedures And Deadlines.**

The Debtors have provided copies of this Disclosure Statement and a Ballot (which includes detailed voting instructions) to all known Holders of Claims in the Voting Classes. Those Holders of a Claim in a Voting Class who wish to vote to accept or reject the Plan must complete the enclosed Ballot and return it to Falcon Ballot Processing, c/o Kurtzman Carson Consultants LLC, 12910 Culver Blvd. Suite I, Los Angeles, California 90066 (the "Ballot Tabulator"), so that it is actually received by the Ballot Tabulator no later than the Voting Deadline (as defined below). Ballots do not constitute proofs of Claims, or amendments to proofs of Claims, and must not be sent to the Debtors or to the Bankruptcy Court. If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing.

*All Ballots must be signed and be returned to, and actually received by, the Ballot Tabulator by no later than September 26, 2005, at 11:59 p.m. Central Time (the "Voting Deadline"). Unless otherwise directed by the Bankruptcy Court, Ballots on which a vote to accept or reject the Plan has not been indicated, will be disregarded. Ballots received*

*after the Voting Deadline, and Ballots sent directly to the Debtors, the Bankruptcy Court, or*
*any entity other than the Ballot Tabulator, will not be counted in connection with*
*confirmation of the Plan.*

*In addition, in the event applicable, each Eligible Class 6A Claimholders must*
*return its Subscription Rights Election Form and executed Shareholders' Agreement, along*
*with five stock powers executed in blank in the form of Exhibit "A" to the Shareholders'*
*Agreement, and each Holder of a Class 6B Claim must return its Class 6B Election Forms so*
*that such documents are actually received by the Ballot Tabulator by the Voting Deadline.*

    **2.**    **Date Of The Confirmation Hearing And Deadlines For Objections To
Confirmation Of The Plan.**

The hearing to determine whether the Bankruptcy Court will confirm the Plan (the
"Confirmation Hearing") will commence on October 6, 2005 at 10:00 a.m. Central Time, in the
Bankruptcy Courtroom of the Honorable Barry Schermer, United States Bankruptcy Judge for
the Eastern District of Missouri, Eastern Division, located in the Thomas F. Eagleton, U.S.
Courthouse, 111 South Tenth Street, Fifth Floor North, St. Louis, Missouri 63102. The
Confirmation Hearing may be continued from time to time by announcement in open Court,
without further notice.

In accordance with the accompanying notice of the Confirmation Hearing (the
"Confirmation Notice"), any objections to confirmation of the Plan must be Filed with the
Bankruptcy Court and served on the following entities by no later than 11:59 p.m. Central Time
on September 26, 2005: (a) Falcon Products, Inc., 10650 Gateway Boulevard, St. Louis Missouri
63132, Attention: Neal R. Restivo; (b) Stutman, Treister & Glatt, Profession Corporation,
1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067, Attention: Marina
Fineman, Esq., counsel for the Debtors; (c) Spencer Fane Britt & Browne LLP, 1 North
Brentwood Boulevard, #1000, St. Louis, Missouri 63105-3925, Attention: Daniel D. Doyle, Esq.,
counsel for the Committee.; (d) Akin Gump Strauss Hauer & Field LLP, 590 Madison Avenue,
New York, New York 10022, Attention: Michael S. Stamer, Esq. and Philip C. Dublin, Esq.,

counsel for the DIP Agent and Agent for the Term A Secured Lenders; (e) Milbank, Tweed, Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, CA 90017, Attention: Paul S. Aronzon, Esq., counsel for the Backstop Parties; and (f) The Office of the United States Trustee (the "U.S. Trustee"), 111 South 10th Street, Rm 6.353, St. Louis, Missouri, 63102, Attention: Lenora Long, Esq.

*Please refer to the accompanying notice of the Confirmation Hearing for specific requirements regarding the form and nature of objections to confirmation of the Plan.*

**D.    Important Notices And Cautionary Statements.**

The liquidation analysis, estimates, and other financial information referenced herein, or attached as exhibits hereto, have been developed by the Debtors with the assistance of their professional advisors.  Although these professional advisors assisted in the preparation of this Disclosure Statement, in doing so such professionals relied upon factual information and assumptions regarding financial, business, and accounting data provided by the Debtors and third parties, none of which information has been audited.  The Debtors' professional advisors have not independently verified such information and, accordingly, make no representations as to its accuracy.  Moreover, although reasonable efforts have been made to provide accurate information, the Debtors cannot warrant or represent that the information in this Disclosure Statement, including any and all financial information, is without inaccuracy or omission.

This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission (the "SEC"), under the Securities Act of 1933, as amended (the "Securities Act"), and the Securities Exchange Act of 1934, as amended (the "Exchange Act"), or by any state authority under any state securities or "blue sky" law, nor has the SEC (or any state authority) passed upon the accuracy or adequacy of the statements contained in this Disclosure Statement.

Neither the right to participate in the Rights Offering nor the Rights Offering Shares have been registered under the Securities Act, or any state or non-U.S. securities laws, and will be offered and sold for investment only to qualifying recipients of the Disclosure

Statement and the Subscription Rights Election Form pursuant to the exemption from registration requirements of the Securities Act provided by Section 4(2) thereof and/or Regulation D promulgated thereunder and in compliance with any applicable state or non-U.S. securities laws pursuant to registration or exemption therefrom.

The right to participate in the Rights Offering may not be sold, transferred, assigned or pledged, in whole or in part. In addition, the Rights Offering Shares may not be sold, transferred, assigned or pledged, in whole or in part, except both (a) as permitted under the Securities Act and any applicable state or other securities laws, pursuant to registration or exemption therefrom, and (b) in accordance with the terms of the Shareholders' Agreement (the "Shareholders' Agreement") that was distributed along with the Subscription Rights Election Form. Investors should be aware that they will be required to bear the financial risks of an investment in the Rights Offering Shares for an indefinite period of time. There will be no public market for the Rights Offering Shares, and, except as set forth in the Shareholders' Agreement, there is no obligation on the part of any person to register the Rights Offering Shares under the Securities Act or any other securities laws.

NOTICE TO FLORIDA RESIDENTS:

THE RIGHTS OFFERING SHARES ARE OFFERED PURSUANT TO A CLAIM OF EXEMPTION UNDER SECTION 517.061 OF THE FLORIDA SECURITIES ACT AND HAVE NOT BEEN REGISTERED UNDER SAID ACT IN THE STATE OF FLORIDA. ALL FLORIDA RESIDENTS WHO ARE NOT INSTITUTIONAL INVESTORS DESCRIBED IN SECTION 517.061(7) OF THE FLORIDA SECURITIES ACT HAVE THE RIGHT TO VOID THEIR PURCHASE OF THE INTERESTS WITHOUT PENALTY WITHIN THREE (3) DAYS AFTER THE FIRST TENDER OF CONSIDERATION.

NOTICE TO GEORGIA RESIDENTS:

THE RIGHTS OFFERING SHARES HAVE BEEN ISSUED OR SOLD IN RELIANCE ON PARAGRAPH (13) OF CODE SECTION 10-5-9 OF THE GEORGIA SECURITIES ACT OF 1973, AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN A

TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN
EFFECTIVE REGISTRATION UNDER SUCH ACT.

NOTICE TO NEW HAMPSHIRE RESIDENTS:

NEITHER THE FACT THAT A REGISTRATION STATEMENT OR AN
APPLICATION FOR A LICENSE HAS BEEN FILED UNDER CHAPTER 421-B OF THE
NEW HAMPSHIRE REVISED STATUTES WITH THE STATE OF NEW HAMPSHIRE NOR
THE FACT THAT A SECURITY IS EFFECTIVELY REGISTERED OR A PERSON IS
LICENSED IN THE STATE OF NEW HAMPSHIRE CONSTITUTES A FINDING BY THE
SECRETARY OF STATE THAT ANY DOCUMENT FILED UNDER RSA 421-B IS TRUE,
COMPLETE AND NOT MISLEADING.  NEITHER ANY SUCH FACT NOR THE FACT
THAT AN EXEMPTION OR EXCEPTION IS AVAILABLE FOR A SECURITY OR A
TRANSACTION MEANS THAT THE SECRETARY OF STATE HAS PASSED IN ANY
WAY UPON THE MERITS OR QUALIFICATIONS OF, OR RECOMMENDED OR GIVEN
APPROVAL TO, ANY PERSON, SECURITY, OR TRANSACTION.  IT IS UNLAWFUL TO
MAKE, OR CAUSE TO BE MADE, TO ANY PROSPECTIVE PURCHASER, CUSTOMER,
OR CLIENT ANY REPRESENTATION INCONSISTENT WITH THE PROVISIONS OF
THIS PARAGRAPH.

*No entity may rely upon the Plan or this Disclosure Statement, or any of the
accompanying exhibits, for any purpose other than to determine whether to vote in favor of or
against the Plan.*  Nothing contained in such documents constitutes an admission of any fact or
liability by any party, and no such information may be deemed evidence of the tax or other legal
effects of the Plan on Holders of Claims or Interests in the Cases.

**CAUTIONARY STATEMENT**:

Certain information included in this Disclosure Statement and its exhibits contains
forward looking statements within the meaning of the Exchange Act.  Such forward looking
information is based on information available when such statements are made, and is with

respect to future results, the occurrence of which involves risks and uncertainties that could cause actual results to differ materially from those expressed in the statements.

There are a number of important factors involving risks and uncertainties beyond the control of the Debtors that could cause actual events to differ materially from those expressed or implied by such statements. Such factors include the Debtors' ability to obtain approval of the Plan, the Reorganized Debtors' ability to meet their cash requirements, the Reorganized Debtors' ability to retain key personnel, effects of the Audit Committee Investigation (discussed in Article III.E hereof) and pending governmental inquiries, the Reorganized Debtors' ability to implement, maintain and monitor an effective internal control system, the ability to successfully implement a fully integrated perpetual inventory system, the ability to successfully implement the Consolidation Plan (discussed in Article III.C hereof), the effects of industry trends, competition and raw material costs and the ability to comply with covenants included in its financing agreement.

E.    **Additional Information.**

Attached as Annexes to this Disclosure Statement are copies of the following:

1.    The Plan (Exhibit 1);

2.    The Debtors' unaudited balance sheet as of October 30, 2004, and unaudited statement of operations for the 7 months ended June 4, 2005 (Exhibit 2);

3.    Estimated consolidated financial Projections (Exhibit 3); and

4.    Hypothetical Liquidation Analysis (Exhibit 4).

5.    List of transfers to non-insider Creditors within ninety days of the Petition Date, and of transfers to insider-Creditors within one year of the Petition Date (Exhibit 5).

Also accompanying this Disclosure Statement are copies of the following:

1.    The Notice of the Order of the Bankruptcy Court approving this Disclosure Statement, the Confirmation Hearing, the deadlines and procedures for voting and for objecting to Confirmation of the Plan, and related matters (the "Confirmation Notice");

2.      For Eligible Class 6A Claimholders, a Subscription Rights Election Form and a Shareholders' Agreement, and five stock powers in the form of Exhibit "A" to the Shareholders' Agreement ;

3.      For Holders of Class 6B Claims, a Class 6B Election Form; and

4.      For each Holder of an Allowed Claim in a Voting Class, the form of Ballot for casting an acceptance or rejection of the Plan, and in certain circumstances, making certain elections under the Plan.

Forms of certain documents referred to in the Plan as the "Plan Documents" are contained in a separate "Plan Documents Supplement" that the Debtors will File with the Bankruptcy Court. Those Plan Documents that have not already been Filed will be Filed no later than 5 days prior to the Confirmation Hearing. The Plan Documents include, but are not limited to, (a) the Amended Term A Loan Agreement discussed in Article III.B.3 of the Plan, (b) the Class 6B Election Form discussed in Article III.B.8 of the Plan, (c) the Exit Facility documents discussed in Article V.C.1 of the Plan, (d) the Post-Confirmation Term B Secured Loan Agreement discussed in Article V.C.2. of the Plan, (e) the Backstop Agreement and the Shareholders' Agreement discussed Article V.C.4 of the Plan, (f) the Management Incentive Plan discussed in Article V.D.3 of the Plan, (g) the Subscription Rights Election Form, (h) the Creditor Trust Agreement discussed in Article V.B.2 of the Plan, and (i) any related documents.

The Plan Documents Supplement will not be served on Creditors, but may be inspected at the Debtors' counsel's website – at http://tcdirect.thompsoncoburn.com/falcon/ – or a copy, or excerpts, may be obtained upon written request to the Debtors' Reorganization Counsel, Attention: Marina Fineman, Esq.

If you have any questions about the procedures for voting on the Plan, desire another copy of a Ballot, Subscription Rights Election Form, Shareholders' Agreement, Class 6B Election Form, or seek further information about the timing and deadlines with respect to Confirmation of the Plan, please write to the Debtors' Reorganization Counsel, Attention: Marina Fineman, Esq. The Debtors' Reorganization Counsel, however, cannot and will not provide

Holders of Claims or Interests with any advice, including advice regarding how to vote on the Plan, the legal effect that Confirmation of the Plan will have upon Claims against or Interests in the Debtors, or advice regarding the representations, warranties and certifications in the Subscription Rights Election Form.

As provided in the Plan, material modifications to the Plan and exhibits to the Plan may be made. Finally, all pleadings Filed in the Cases are on file with the Clerk of the Bankruptcy Court and available for review during normal business hours. Written requests for a copy of any specific pleading may also be made to the Debtors' Reorganization Counsel, Attention: Marina Fineman, Esq.

## II.

## BACKGROUND OF THE DEBTORS

### A.    Prepetition Background.

#### 1.    Corporate Structure.

With the exception of Epic, of which Falcon is the majority shareholder, all of the Debtors are direct or indirect subsidiaries of, and are wholly owned by, Falcon. The Debtors' corporate structure as of the Petition Date was as follows: (i) Falcon owns 100% of the stock of Shelby Williams, Howe, Falcon Companies International, and Falcon Holdings; (ii) Howe owns 100% of Johnson Industries; (iii) Shelby Williams owns 100% of the stock of S&J and Madison Furniture Industries; and (iv) Falcon owns 80% of the stock of Epic, while the remaining 20% is owned by three individuals who also comprised Epic's management team as of the Petition Date. The three individuals who previously comprised Epic's management team resigned their positions as officers and directors of Epic effective June 29, 2005, which resulted in the termination of their employment.

The primary operating companies are Falcon, Shelby Williams, Epic and S&J. Howe and Johnson are brand names under which Falcon continues to sell products. Falcon Companies International, Falcon Holdings, and Madison Furniture Industries are all inactive corporations.

### 2.    Furniture Manufacturing Operations.

Collectively, the Debtors are engaged in the design, manufacture, and marketing of an extensive line of furniture for the food service, contract office, hospitality, healthcare and education markets.  Founded by Franklin A. Jacobs ("Mr. Jacobs") in 1958, Falcon was established in St. Louis, Missouri to provide furniture to the food service industry.  Over the years, the company expanded, through both acquisitions and organic growth, into furniture for the office, hospitality, healthcare and educational industries.  The most noteworthy of Falcon's acquisitions were:

- The asset purchase in January of 1994 of Charlotte Company, Inc., a manufacturer and distributor of wood and metal seating and tables for office, food service and lodging applications.

- The asset purchase in September of 1995 of Décor Concepts, a manufacturer of interior décor products, including seating tables and case goods for restaurant chains.

- The asset purchase in October of 1996 of The Chair Source, a manufacturer of wood and upholstered seating distributing to the food service, hospitality and lodging industries.

- The stock purchase in March of 1998 of Howe, a designer, manufacturer and distributor of tables for both the contract office and hospitality industries.

- The stock purchase in June of 1999 of Shelby Williams, a designer, manufacturer and distributor of seating products used in the hospitality and food service industries.

In 2000, Falcon along with three individuals who, as of the Petition Date, comprised Epic's management team and owned 20% of the stock of Epic, formed Epic to provide Falcon with an opportunity to expand into the high-end, high-design contract office market.  Epic offers a wide selection of wood, metal, and upholstered seating, along with an assortment of complementary tables and accessories.

As a result of its acquisitions and growth, Falcon is now comprised of the nine domestic debtor corporations, plus five active foreign corporations in China, Hong Kong, Mexico, the Czech Republic, and Denmark at which the Debtors manufacture furniture and furniture parts.[2] All of the foreign corporations are wholly-owned by Falcon, except for Falcon Mimon a/s Czech Republic, of which Falcon owns 87.4%. These foreign subsidiaries manufacture furniture for their local customers, and also export unassembled furniture to the Debtors' factories located in the United States.

The Debtors manufacture metal and wood and rattan chairs and other seating products, banquet and conference tables, table tops and bases, booths and case goods under one or more following brand names: Falcon, Charlotte, Thonet, King Arthur, Décor Concepts, Epic, Howe, Johnson Tables, and Shelby Williams. The Debtors also manufacture portable dance floors and platforms, as well as a full range of vinyl wall coverings, which the Debtors market under the S&J and King Arthur brand names.

The Debtors manufacture most of their products to customer order from basic raw goods. The Debtors market their product to a wide variety of customers, including wholesale distributors, buying groups, architecture and design firms, office furniture dealers and end-users through their sales employees and agents. The Debtors' customers include, among others, major hotel chains, restaurants and restaurant chains, hospitals, governmental agencies, and schools and universities throughout the world.

As of the Petition Date, the Debtors employed approximately 1,640 people who were mainly located in Missouri, Tennessee, California, New Jersey, and Florida at their headquarters, sales offices, showrooms and factories. In addition, the Debtors utilized over thirty (30) independent sales representative agencies throughout the country to sell their product, which account for approximately fifty-percent (50%) of the Debtors' sales. As of the Petition Date, approximately 465 employees were union members covered by a collective bargaining

---

[2]   The Debtors also have four inactive subsidiary corporations in Mexico, England and the U.S. Virgin Islands.

agreement between the Debtors and the United Food and Commercial Workers International Union.

Pursuant to the Schedules, as of the Petition Date, the Debtors had assets of approximately $85.0 million and liabilities of approximately $270.0 million.

### 3.    Intellectual Property.

The Debtors have registered the "Falcon"®, "Charlotte"®, "Howe"®, "Johnson Tables"®, "Shelby Williams"®, "King Arthur"®, "Thonet"®, "Epic"®, "Sellers & Josephson"®, trademarks, in addition to numerous other trademarks, with the United States Patent and Trademark Office.  Falcon has received mechanical patents on certain of its furniture mechanisms and components.

### 4.    Equity Ownership.

Falcon is a public company, although it has been unable to file quarterly or annual reports with the SEC since September 2004.  As of the Petition Date, there were 9,915,117 common shares of Falcon outstanding.  Mr. Jacobs, through shares held directly, through family members and through affiliated entities, is Falcon's largest shareholder, with 2,090,161 common shares, or 21.1% of the total common shares outstanding.

### 5.    Management Of The Debtors.

On June 21, 2005, Mr. Jacobs resigned and retired from his positions as Chairman, President, and Chief Executive Officer of Falcon as the result of the events described in Article III.E hereof.  Mr. Jacobs was replaced by Mr. John S. Sumner, Jr. ("Mr. Sumner"), of TRG Turnaround and Crisis Management ("TRG").  Mr. Sumner was initially retained in the Cases to serve as Falcon's Chief Restructuring Officer ("CRO"), effective as of February 18, 2005.  Upon Mr. Jacobs's resignation and retirement, the Board of Directors appointed Mr. Sumner as Falcon's President and Chief Executive Officer, effective June 21, 2005.  Falcon's Board of Directors is currently comprised of the following members:

| Melvin F. Brown |
| Steven C. Roberts |
| Stephen Lee Kling |
| Martin E. Blaylock |

Falcon's current officers are listed in the table below:

| NAME | POSITION |
| --- | --- |
| John S. Sumner, Jr. | President and Chief Executive Officer |
| Neal R. Restivo | Corporate Vice President and Chief Financial Officer |
| Stephen E. Cohen | Vice President, Sales and Marketing |
| John Cronin | Vice President, Marketing and New Product Development |
| Theresa Moyer | Director of Human Resources |
| Michael E. Jacobs | Vice President, International |
| Daniel Steinberg | Vice President, Information Technologies |
| Janet Chiodi | Vice President, Supply Chain Management |

### 6.    Events Leading To The Chapter 11 Filings.

In 2001, the Debtors began to experience a prolonged downturn in their revenues and profits, coinciding with the broader economic downturn in the United States. The Debtors' economic performance worsened in each of the fiscal years of 2002, 2003 and 2004. Annual revenues decreased from $266.0 million in 2002 to $203.0 million in 2004. A reduction in operating profits followed with the Debtors going from an operating profit of $17.7 million in 2002 to a significant operating loss in 2004.

The deterioration in the Debtors' revenues and profits is largely attributable to the continuation of weak market conditions since the events of September 11, 2001. Most significantly, over the three years prior to the Petition Date, the Debtors witnessed a decline in the hospitality market -- the Debtors' largest target market -- evidenced by a lack of new construction and a deferral of refurbishments in this industry. In addition, there was a noticeable decline in corporate expenditures for furniture products.

In the wake of the revenue downturn, the Debtors decided to discontinue certain of their unprofitable businesses and to restructure their manufacturing operations by consolidating seven domestic manufacturing plants into three. As a result, the Debtors incurred